UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIMONIZ USA, INC. | : | |
|     Plaintiff | : | |
| | : | CIVIL ACTION NO.: |
| v. | : | 3:07-cv-392 (JCH) |
| | : | |
| MOTOR CITY WASH WORKS, INC. | : | |
|     Defendant | : | NOVEMBER 9, 2007 |

**<u>RULING RE: MOTION TO DISMISS OR TRANSFER (Doc. Nos. 22, 23)</u>**

This case involves a patent infringement action brought by plaintiff Simoniz USA, Inc. ("Simoniz") against defendant Motor City Wash Works, Inc. ("MCWW"). In its Complaint, Simoniz alleges that MCWW has infringed on two of Simoniz's patents through MCWW's marketing and sale of a car wash product – the Motor City Super Shiner. MCWW has moved the court to either dismiss this case for lack of personal jurisdiction, or to transfer the case to another district. The court **DENIES** the Motion.

**I.    BACKGROUND**

On March 13, 2007, Simoniz filed its Complaint in this District. Simoniz alleged that MCWW has been and is now "infringing, contributorily infringing, and or inducing infringement" of both patents by "making, using, selling and/or offering to sell" the Super Shiner. Compl. at ¶¶ 8, 13 (Doc. No. 1). Simoniz requested injunctive and monetary relief.

MCWW responded on August 3, 2007, by filing a Motion to Dismiss for lack of personal jurisdiction. (Doc. No. 22). In the alternative, MCWW requested that the case be transferred to the Eastern District of Michigan, where related litigation is pending

between the parties. (Doc. No. 23).

MCWW is a Michigan corporation that maintains its principal place of business in Michigan. The company designs, manufactures, and sells car wash equipment. Among its products is the Super Shiner, an automated tire coating applicator designed to be used in car wash facilities. MCWW asserts, through the Declaration of its President, that it has never sold or taken orders for the Super Shiner in Connecticut. Belanger Dec. at ¶ 6. Its President also alleges that MCWW "has not called on customers in Connecticut for the purposes of showing, promoting[,] or selling its Super Shiners." Id. at ¶ 7.

Simoniz is a Connecticut corporation with its principal place of business in Connecticut. The company manufactures and markets a variety of products, including products for car washes. By assignment, Simoniz owns two patents at issue in this lawsuit: one that covers machines that apply tire dressings, and one that covers methods for applying tire dressings in commercial car washes.

Simoniz opposed MCWW's Motion to Dismiss by relying in significant part on a Declaration submitted by William Gorra, Simoniz's President. Among other things, Gorra stated that MCWW has at least one distributor in Connecticut, Autoshine Car Wash Systems, LLC ("Autoshine"), a Connecticut company that maintains its principal place of business in East Hartford, Connecticut. Gorra Dec. at ¶¶ 6-7. According to Gorra, Autoshine sells and offers to sell the full range of MCWW's car wash equipment to Connecticut car washes, including the Super Shiner. Id. at ¶¶ 9, 11.

Gorra's Declaration also discusses MCWW's regional and national advertising. According to him, MCWW marketed the Super Shiner regionally at the 2006 Northeast

Regional Car Wash Convention, which was held in Atlantic City. Id. at ¶¶ 13-16. Approximately 100 Connecticut car wash owners/operators attended this convention, and they made up about 20% of the attendees. Id. at ¶ 14.[1] Nationally, MCWW marketed the Super Shiner at the 2007 Car Care World Expo, which was held in Las Vegas and attended by a number of car wash owners/operators – including about 50 from Connecticut. Id. at ¶ 18. At its booth, MCWW provided detailed technical and pricing information on the Super Shiner. Id. at ¶ 20. MCWW also nationally markets the Super Shiner by regularly advertising in a trade magazine, Modern Car Care. Id. at ¶ 22. In these ads, MCWW touts the Super Shiner, and it invites interested customers to contact MCWW via a toll free number, or by visiting MCWW's website. Id. at ¶ 22 & Exh. B. Modern Car Care is a monthly publication that is mailed to a number of car washes, including some in Connecticut. Id. at ¶ 22.

MCWW's website also promotes the Super Shiner. The site, which is publicly accessible, contains a variety of promotional and technical information about the Super Shiner. Id. at ¶¶ 23-27. An online brochure advertises Super Shiners as available for lease, and its lists a 60-month plan at $254 per month, and a 48-month plan at $304 per month. Id. at ¶ 28. The website also allows visitors to purchase Super Shiners online. Id. at ¶¶ 31-40 The regular Super Shiner system is offered for sale at $11,500, and the Super Shiner Inbay system is offered for sale at $12,750. Id. at ¶ 34.

## II. DISCUSSION

---

[1] Gorra's Declaration, which is dated September 7, 2007, also states that MCWW was slated to attend the 2007 regional convention, which was held October 17-19, 2007. Id. at ¶ 17. Although the convention was held in Atlantic City, the Connecticut Car Wash Association was the host of the convention. Id.

Because this is a patent infringement action, the court must apply the law of the Federal Circuit in evaluating questions of personal jurisdiction. Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564 (Fed. Cir. 1994). This inquiry has two steps. First, the court must determine whether the exercise of jurisdiction is consistent with Connecticut's long-arm statute. See Silent Drive, Inc. v. Strong Indus., 326 F.3d 1194, 1200 (Fed. Cir. 2003). If the state statute is satisfied, the court must consider whether the constitutional requirements of due process have been complied with. Id. at 1201.

At this stage of the case, the parties have not yet conducted any discovery. Thus, the plaintiff needs only to make a prima facie showing that the court has jurisdiction. See id. This means that the court must view submitted affidavits and written materials, resolving all factual disputes in favor of the party asserting jurisdiction. Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1347 (Fed. Cir. 2002).

    A.    The Connecticut Long Arm Statute

MCWW first argues that the Connecticut long-arm statute does not reach the conduct at issue in this case. The long-arm statute provides, in pertinent part:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the

4

>state; (3) out of the production, manufacture or distribution
>of goods by such corporation with the reasonable
>expectation that such goods are to be used or consumed in
>this state and are so used or consumed, regardless of how
>or where the goods were produced, manufactured, marketed
>or sold or whether or not through the medium of
>independent contractors or dealers; or (4) out of tortious
>conduct in this state, whether arising out of repeated activity
>or single acts, and whether arising out of misfeasance or
>nonfeasance.

Conn. Gen. Stat. § 33-929(f). In this case, MCWW is subject to Connecticut's jurisdiction under Section 33-929(f)(4).

First, the court concludes that patent infringement is tortious conduct within the meaning of Connecticut's long arm statute. In <u>Trintec Industries, Inc. v. Time to Invent, LLC</u>, 395 F.3d 1275 (Fed. Cir. 2005), the Federal Circuit held that patent infringement was "tortious injury" within the meaning of the D.C. long-arm statute. <u>Id.</u> at 1280; <u>see also</u> <u>Beverly Hills Fan</u>, 21 F.3d at 1571 (holding that patent infringement is "tortious injury" within the meaning of Virginia's long-arm statute). The court sees no reason to treat Connecticut's long-arm statute differently. <u>Cf.</u> <u>Olin Corp. v. Furukawa Elec. Co. Ltd.</u>, No. 3:02-cv-184 (SRU), 2003 U.S. Dist. LEXIS 6280, at *5-7 (D. Conn. Apr. 15, 2003) (accepting that patent infringement is tortious under the Connecticut long-arm statute, but finding that the conduct at issue in that case did not constitute patent infringement).

Second, Simoniz has made a <u>prima facie</u> showing that MCWW engaged in patent infringement in Connecticut. The patent infringement statute creates liability for <u>offers</u> to sell infringing products, as well as actual sales of such products. See 35 U.S.C. § 371(a) ("[W]hoever without authority makes, uses, <u>offers to sell</u>, or sells any

5

patented invention . . . infringes the patent.") (emphasis added). And an entity "offers" to sell an item when it provides a description of the infringing merchandise along with a price at which it can be purchased. 3D Systems Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1379 (Fed. Cir. 1998); see also HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1310 (Fed. Cir. 1999) (implying that a communication would be an offer of sale if it stated that an item was available for purchase).

In this case, Simoniz had made a prima facie showing that MCWW has offered the Super Shiner for sale in Connecticut. First MCWW's advertises the Super Shiner in a publication delivered to Connecticut residents, as well as on its interactive internet website, which is accessible to Connecticut residents. Taken together, these constitute offers to sell the Super Shiner in Connecticut.[2] Cf. Hersey v. Lonrho, Inc., 807 A.2d 1009, 1012 (Conn. Ct. App. 2002) (finding that a travel marketing company repeatedly solicited business in Connecticut through its website, its ads in newspapers delivered in Connecticut, and through its distribution of brochures to Connecticut travel agents). Second, because Autoshine is a Connecticut distributor of MCWW products, including the Super Shiner, it is a reasonable inference to conclude from this that MCWW has offered to sell the Super Shiner to Autoshine.[3] This would be another offer to sell in

---

[2] MCWW questions whether any Connecticut resident has every accessed MCWW's website. Reply Br. at 3-4. Although the court's conclusion does not depend on this fact, the Gorra declaration makes clear that, before the filing of this Complaint, Gorra himself visited MCWW's website on behalf of Simoniz. Gorra Dec. at ¶ 5.

[3] MCWW argues that Gorra's Declaration testimony about Autoshine is inadmissible because it is not based on personal knowledge. Reply Br. at 4-5. However, Gorra states in his declaration that, if sworn as a witness, he could testify competently to the matters stated. Gorra Dec. at ¶ 1. The court has no basis to definitively conclude that the relevant facts about Autoshine are not within Gorra's

Connecticut.

B.  Due Process

MCWW is an out-of-state corporation, and no party contends that MCWW is subject to general jurisdiction in Connecticut. Accordingly the due process inquiry turns on whether or not MCWW is subject to specific jurisdiction in this state. Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1360-61 (Fed. Cir. 2006). Specific jurisdiction exists if "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." Id. at 1363 (citing Akro Corp. v. Luker, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)). The first two prongs of this test correspond to the "minimum contacts" prong of International Shoe Co. v. Washington, 326 U.S. 310 (1945). Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003).

The court concludes that the first two prongs are met here because MCWW purposefully directed offers of sale towards Connecticut residents, and because Simoniz's claims arise out of or relate to those offers. A company purposefully directs its conduct towards the forum state when it takes actions that "indicate an intent or purpose to serve the market in the forum state." Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102, 112 (1987) (opinion of O'Connor, J.); Commisariat a

---

personal knowledge or otherwise admissible. To the contrary, Gorra's Declaration suggests that he has personal experience with ordering MCWW products through Autoshine. Id. at ¶ 11. At this stage in the proceedings, the court must construe the Declaration in the light most favorable to Simoniz, and it will not ignore the portions of the Declaration in which Gorra discusses Autoshine.

L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1321-22 (Fed. Cir. 2005). Facts that could demonstrate this intent include, inter alia, "advertising in the forum state" and "marketing the product through a distributor who has agreed to serve as the sales agent in the forum state." Asahi, 480 U.S. at 112 (opinion of O'Connor, J.).

Here, MCWW purposefully directed its offers towards Connecticut residents in several different manners. First, through its ads in Modern Car Care, and through its website, MCWW has offered to sell the Super Shiner to Connecticut residents. It is true, as MCWW points out, that neither of these advertising campaigns were specifically directed towards Connecticut residents. But that does not matter. The ads in Modern Car Care can be thought of as being distributed to Connecticut customers through an "established distribution channel." Beverly Hills Fan, 21 F.3d at 1565. That is, MCWW specifically hired Modern Car Care to distribute its ads for the Super Shiner to all of the states in which Modern Car Care has subscribers.[4] Additionally, while MCWW's website is not specifically directed at any individual state, the website also makes no attempt to avoid Connecticut customers. It is plain that MCWW's interactive website – which solicits and allows online orders -- is purposefully offering the Super Shiner for sale to Connecticut customers, just as it is purposefully offering the Super

---

[4] Modern Car Care can also be conceived of as MCWW's agent for purposes of advertising the Super Shiner. There is no dispute that Modern Car Care purposefully directs its magazine, and the ads it contains, to car washes in Connecticut. Under an agency theory, Modern Car Care's purposeful distribution could then be imputed to MCWW. See Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 429 (Fed. Cir. 1996) (imputing an authorized distributor's actions to the principal for purposes of the minimum contacts test).

Shiner for sale to other customers.  See Inset Sys. v. Instruction Set, Inc., 937 F. Supp. 161, 165 (D. Conn. 1996); cf. Maynard v. Phila. Cervical Collar Co., Inc., 18 Fed. Appx. 814, 816 (Fed. Cir. 2001) (stating that maintenance of a passive website, without more, is insufficient to constitute purposeful availment).[5]

Second, through its distribution agreement with Autoshine, MCWW has also purposefully directed offers for sale to Connecticut.  As discussed above, the Gorra declaration creates the inference that MCWW has actually offered the Super Shiner for sale to Autoshine, a Connecticut resident.  But even ignoring that fact, the Gorra declaration provides evidence that Autoshine is offering the Super Shiner for sale in Connecticut, and that it is doing this as an authorized distributor of MCWW.  This established distribution channel is sufficient to satisfy the minimum contacts prong.  See Beverly Hills Fan, 21 F.3d at 1565.

Finally, the court must add to the mix MCWW's trade show presence.  While neither trade show took place in Connecticut, both trade shows were attended by a number of Connecticut car washes.  It is a reasonable inference that at one or both of these trade shows, MCWW offered the Super Shiner for sale to one or more Connecticut residents.  Those contacts provide additional support for the assertion of jurisdiction here.

Once the minimum contacts test has been satisfied, the burden shifts to the defendant to show that the assertion of personal jurisdiction would be unreasonable or

---

[5] MCWW fears that this analysis might subject it to personal jurisdiction in every state.  But that is simply the nature of the beast – a defendant who commits patent infringement in many jurisdictions must accept the fact that it will be subject to suit in many jurisdictions.  See HollyAnne Corp., 199 F.3d at 1308 n.4.

unfair. <u>Brekenridge</u>, 444 F.3d at 1361-62. Here, MCWW has not offered any arguments that speak to this issue. <u>See generally</u> Mem. of Law in Support of Motion to Dismiss at 11-16. Accordingly, the court concludes that MCWW has not met its burden on this prong, and thus the court finds that Simoniz has made a <u>prima facie</u> showing that the assertion of jurisdiction in this forum comports with due process.

### C. <u>Transfer of Venue</u>

As an alternative to dismissing the case for lack of jurisdiction, MCWW's asks this court to transfer venue. <u>Id.</u> at 16-17. However, the sole grounds articulated is that this would allow the case to proceed in a forum where there is personal jurisdiction over MCWW. <u>Id.</u> This does not justify transfer in light of the court's conclusion that there is personal jurisdiction in Connecticut.

### III. CONCLUSION

MCWW's Motion [Doc. Nos. 22, 23] is **DENIED**.

**SO ORDERED.**

Dated at Bridgeport, Connecticut, this 9th of November, 2007.

        /s/ Janet C. Hall
        Janet C. Hall
        United States District Judge